# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

CLAUDINE A. BAKER CLARK,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Civil Action 2:20-cv-3338
Judge Edmund A. Sargus, Jr.
Magistrate Judge Chelsey M. Vascura

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 15), the Commissioner's Memorandum in Opposition (ECF No. 17), Plaintiff's Reply (ECF No. 18), and the administrative record (ECF No. 12). For the reasons that follow, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination and **REMAND** this matter to the Commissioner and the ALJ pursuant to Sentence Four of § 405(g).

    **I.**    **BACKGROUND**

Plaintiff filed an application for DIB on April 27, 2017, alleging that she became disabled on July 7, 2016. (R. at 188.) Plaintiff's application was denied initially in July 2017, and upon reconsideration in September 2017. (R. at 84, 103). A hearing was held on February 22, 2019, before an Administrative Law Judge ("ALJ"), who issued an unfavorable determination on

January 6, 2017. (R. at 37–67, 16–18, 19–35.) The Appeals Council declined to review that unfavorable determination, and thus, it became final. (R. at 1–6.)

Plaintiff seeks judicial review of the Commissioner's final determination. She alleges that the ALJ committed reversible error when she assessed Plaintiff's residual functional capacity[1] ("RFC"). Specifically, Plaintiff contends that the ALJ erred by failing to adequately explain why she did not incorporate into Plaintiff's RFC all the restrictions that state agency reviewer, Robert Baker, PhD., had found despite concluding that Dr. Baker's findings were "persuasive." (ECF No.15, at PageID 698–702.) The undersigned agrees.

## II. THE ALJ DECISION

The ALJ issued her decision on June 21, 2019, finding that Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 19–35.) At step one of the sequential

---

[1] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 4040.1545(a)(1).

evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially gainful activity since July 7, 2016, her alleged date of onset. (R. at 21.) At step two, the ALJ found that Plaintiff had the following severe impairments: 1) a history of cervical intraepithelial neoplasia III with total hysterectomy and bilateral salpingo-oophorectomy; 2) degenerative disc disease; 3) hypothyroidism; and 4) a combination of mental impairments variously characterized/diagnosed as depression, anxiety, and personality disorder. (*Id*.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22.) At step four, the ALJ determined Plaintiff's RFC, in pertinent part,[3] as follows:

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

    1. Is the claimant engaged in substantial gainful activity?

    2. Does the claimant suffer from one or more severe impairments?

    3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

    4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

    5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

[3] The ALJ also included a number of physical limitations in Plaintiff's RFC. Because Plaintiff's challenge only concerns the ALJ's findings with regard to her mental health limitations, the undersigned limits her discussion to that issue.

3

> [T]he claimant has the [RFC] to perform a light work as defined in 20 C.F.R. 404.1567(b) with the following additional limitations…
>
> the claimant is limited to simple routine tasks in environment with only occasional changes in the work setting and no production rate pace, meaning where the production rate is set by an external source such as an assembly lime or conveyor belt;
>
> she must work in an environment where she does not have to interact with the public, and may occasionally and superficially interact with coworkers and supervisors*
>
> *Superficially here meaning no social interactions required, i.e., passing in the hallway, etc.

(R. at 24.) The ALJ then relied on testimony from a vocational expert ("VE") to determine that although Plaintiff could not perform any past relevant work, in light of her age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that she could perform. (R. at 29.) The ALJ therefore concluded Plaintiff was not disabled under the Social Security Act. (R. at 30.)

## III. RELEVANT RECORD EVIDENCE

### A. Plaintiff's Testimony

At the February 22, 2019, hearing, Plaintiff testified about her mental health. She testified that she took citalopram for depression/anxiety in the daytime and hydroxyzine for anxiety. (R. at 47.) She stated that her depression and anxiety interfered with her ability to work because she would be short with people due to pain and distraction and would appear to be rude. (R. at 52.) She elaborated that she would be in pain and would not have the patience to deal with "idle chitchat or pleasantries." (*Id*.) Plaintiff stated that when she felt anxious, her heart would flutter, and she would experience sweating and lightheadedness. (R. at 56.) Her anxiety was triggered by things that she knew she could not get away from quickly such as fighting, arguing, people, traffic, or a crying baby. (*Id*.) Plaintiff further testified that she abused drugs after her

4

third husband died of cancer but had ceased doing so 12 or 13 years ago. (R. at 53.) She occasionally went out with friends and had a few beers and that would ease her physical pain a little bit. (*Id.*)

**B.     Records Related to Plaintiff's Mental Health**

Documentation about treatment for Plaintiff's physical ailments contain notes about her mental health that tend to demonstrate that in 2016 and 2017, Plaintiff sometimes suffered from depression and/or anxiety but that these conditions were frequently related to her concerns about her physical health, including her positive cancer diagnosis, or issues with family members, and that she generally responded well to medications. For instance, Plaintiff denied anxiety and depression on May 5, 2016, and July 5, 2016 (R. at 284, 275), and denied anxiety on June 13, 2016 (R. at 280). Throughout this period, she was also alert and oriented to person, place, and time (R. at 284, 280, 276, 393), her mental status was grossly normal (R. at 284, 280), her affect was normal (R. at 280), and her judgment was normal (R. at 284, 280).

In January 2017, Plaintiff had a moderate episode of recurrent major depressive disorder, and her Cymbalta prescription was increased. (R. at 290.) On March 14, 2017, Plaintiff reported that she was depressed because of her and her husband's health problems, and she began taking Wellbutrin. (R. at 300, 301.) On March 29, 2017, Plaintiff reported being upset about findings from an endometrial biopsy; she had an anxious and tearful mood. (R. at 305, 306.) On April 17, 2017, Plaintiff was upset about a medical procedure (R. at 310), her mood and affect were depressed and anxious, and she was diagnosed with a mild episode of recurrent depressive disorder (R. at 312). On June 6, 2017, Plaintiff reported difficulties concentrating and sleeping, and she discussed taking Ativan with her care provider. (R. at 410, 412.) Nevertheless, on May 22, 2017, Plaintiff's scores on a depression screen were positive for only minimal to mild

5

depression, and she reported that Cymbalta was controlling her depression symptoms. (R. at 432, 433.) Plaintiff was also alert and oriented to person, place, and time throughout this period (R. at 300, 271, 316, 432–33, 319, 331, 423.) She had normal mood, affect, behavior, and thought content on May 22 and July 31, 2017 (R. at 433, 472); normal mood, affect, and behavior on May 31, June 15, and June 28, 2017 (R. at 319, 331); and no behavioral problems or confusion and normal mood and affect on June 12, 2017 (R. at 423, 424).

On June 24, 2017, Plaintiff was consultatively examined by Janice Peterson, PhD. (R. at 413–19.) Upon examination, Plaintiff was clean and neat in appearance. (*Id.*) She knew the purpose of the evaluation and did not act impulsively or in an eccentric manner. (*Id.*) Plaintiff had good eye contact, and normal facial expressions, gestures, and tone of voice. (*Id.*) She did not exhibit psychomotor retardation or agitation. (*Id.*) Plaintiff's speech was direct with unimpaired articulation, she was fully understandable, and her expressive and receptive language was unimpaired. (*Id.*) Her associations, however, were sometimes circumstantial and rambling. (*Id.*) Plaintiff's affect was also full, but her mood was restless, excitable, and anxious, and she described feeling like she was on the edge of stressing out. (*Id.*) Plaintiff reported crying one to two times a week and feeling depressed for a few days at a time and that she felt more depressed due to health problems suffered by her children, her mother, and her husband. (*Id.*) Plaintiff also reported low-to-sometimes-normal energy levels and mood swings ranging from feeling okay to feeling really "ticked off and angry." (*Id.*) But she denied symptoms of mania or hypomania. (*Id.*) Plaintiff fidgeted with her hands throughout the interview and sometimes rambled when responding to questions. (*Id.*) She was oriented to person, place, time, and situation, and her short-term memory was intact. (*Id.*) Her working memory was, however,

below average.  (*Id.*)  Plaintiff's concentration was fair to average; her persistence and pace were average; and she responded appropriately to two social judgment situations.  (*Id.*)

Dr. Peterson's diagnostic impression was generalized anxiety disorder, unspecified depressive disorder, unspecified personality disorder, and severe alcohol and cocaine use disorder in remission.  (*Id.*)  Dr. Peterson opined that Plaintiff was impaired in the areas of concentration and stress tolerance.  (*Id.*)  Specifically, Dr. Peterson opined that Plaintiff's ability to concentrate and persist at a reasonable pace, maintain effective social interactions on a consistent basis with others in a work setting, and deal with normal work pressure in a competitive setting were likely impaired.  (*Id.*)

In July 2017, Kristen Haskins, PsyD. reviewed Plaintiff's file at the initial level.  (R. at 81.)  Dr. Haskins found that "[d]ue to depression and anxiety [Plaintiff] may have trouble maintaining attention and concentration on complex tasks" and that she was limited to "short, simple, and routine tasks in a setting without a fast pace demand."  (R. at 80.)  In addition, Dr. Haskins found that Plaintiff "may have trouble maintaining socially appropriate workplace behavior" and that she was limited to "superficially interact[ing] in the workplace."  (R. at 80–81.)  Dr. Haskins further found that Plaintiff "will have trouble handling workplace stress and pressure appropriately" and that she was limited to "tasks without strict time limitations or production standards."  (R. at 81.)

In September 2017, Robert Baker, PhD. reviewed Plaintiff's file at the reconsideration level.  (R. at 99.)  Dr. Baker wrote that the "[p]rior administrative findings from initial claim level are consistent with reconsideration claim level."  (*Id.*)  Nevertheless, Dr. Baker's findings differed from Dr. Haskins' findings in that Dr. Baker found that Plaintiff had several additional limitations.  First, Dr. Baker found that although Plaintiff was "able to concentrate sufficiently

7

for the completion of 1–3 step tasks," she was also limited to "work in a separate workspace with occasional superficial interactions with others," and that she "might need occasional flexibility with breaks when experiencing increased symptoms." (R. at 98.) Next, Dr. Baker found that Plaintiff was limited to "work in a setting with limited interaction with the general public and with a small group that involves occasional and superficial interactions with others" and that "[s]upervisors should provide supportive and constructive feedback." (R. at 99.) Moreover, Dr. Baker found that Plaintiff would "have some difficulty handling workplace stress and pressure" and that she "may need advance notice of major changes, which should be gradually implemented allowing her time to adjust to them." (*Id*.)

Records from Plaintiff's treatments for physical ailments in 2018 indicate that she continued to struggle with anxiety and depression; that these conditions were sometimes related to situational issues; and that her issues were amenable to medication. On April 25, 2018, Plaintiff reported that she had experienced a lot of stress due to problems she had with her husband and that she had experienced severe anxiety and panic attacks. (R. at 520.) She also reported that she had been prescribed Ativan while fighting cancer and that it had helped her greatly with anxiety, but she had run out of it. (*Id*.) Although her depression was "awful," she declined counseling. (R. at 520, 519.) During this visit, her mood and affect were anxious, but she was alert and oriented to person, place, and time; her mental status was grossly normal; her thought processes and content were normal; and her insight and judgment were good. (R. at 521, 522.) She was diagnosed with a moderate episode of recurrent major depressive disorder. (R. at 525.) Similarly, on June 5, 2018, Plaintiff reported being stressed while taking care of things while her husband was in rehab. (R. at 536.) She reported that she needed counseling but had not been seen by anyone "due to insurance." (*Id*.) On this date, and on August 29, 2018, she

was oriented to person, place, and time; her mental status was grossly normal; and her speech, movement, mood, and affect were normal. (R. at 538, 550.) On August 29, 2018, she was diagnosed with only a mild episode of recurrent major depressive disorder. (R. at 551.) Plaintiff also denied experiencing depression and anxiety during several treatment sessions in 2018. (R. at 530, 557, 608.)

In December 2018 and January 2019, Plaintiff sought mental health treatment. from Allwell Behavioral Health Services. On December 26, 2018, she reported that she was homeless and that she had a history of substance abuse. (R. at 574, 578–79.) Plaintiff had slowed body movements, soft speech, impaired abstract thinking, impaired immediate recall, and difficulties making decisions. (R. at 579–80.) Nevertheless, her mental status examination, behavior, facial expressions, affect, mood, perceptions, and hallucinations were not remarkable, and she was oriented to time, place, and person. (*Id.*) On January 12, 2019, Plaintiff reported that her current location made her depressed. (R. at 595.) On January 31, 2019, Plaintiff had no associations or overt delusions, clear and linear thought processes, intact judgment and insight, and she was oriented to time, place, and person. (R. 590.) In addition, her recent and remote memory had no apparent impairments, her attention span and concentration were within normal limits, and she had situationally appropriate language, knowledge fund, mood, and affect. (R. at 591.)

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take 'into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## V. ANALYSIS

As previously explained, Plaintiff alleges that the ALJ erred by failing to adequately explain why she did not incorporate into Plaintiff's RFC all the restrictions that state agency reviewer, Dr. Baker, found despite concluding that Dr. Baker's findings were "persuasive." (ECF No.15, at PageID 698–702.) Plaintiff's allegation of error is well taken.

10

A claimant's RFC is an assessment of "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a)(1) (2012). A claimant's RFC assessment must be based on all the relevant evidence in a his or her case file. *Id*. The governing regulations[4] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. §§ 404.1513(a)(1)-(5); 416.913(a)(1)–(5). With regard to two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a); 416.920c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability program s policies and evidentiary requirements." §§ 404.1520c(c)(1)–(5); 416.920c(c)(1)–(5). Although there are five factors, supportability and consistency are the most important, and the ALJ must explain how they were considered. §§ 404.1520c(b)(2); 416.920c(b)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id*. If, however, an ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well-supported . . . and consistent with the

---

[4] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 404.1513(a), 404.1520c, 416.913(a), 416.920c (2017).

record . . . but are not exactly the same, [the ALJ must] articulate how [he or she] considered the other most persuasive factors . . . . . " §§ 404.1520c(b)(3); 416.920c(b)(3).

In addition, when a medical source provides multiple opinions, the ALJ need not articulate how he or she evaluated each medical opinion individually. §§ 404.1520c(b)(1); 416.920c(b)(1). Instead, the ALJ must "articulate how [he or she] considered the medical opinions . . . from that medical source together in a single analysis using the factors listed [above], as appropriate." *Id.*

In this case, the ALJ analyzed the administrative findings from Drs. Haskins and Baker at the same time and concluded that they were persuasive. The ALJ wrote:

> [T]he residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also support a finding that the claimant is not disabled.
>
> The opinions of Kirsten Haskins, PsyD, and Robert Baker, PhD, are consistent with the medical evidence of record as a whole, even including the medical records subsequent to their assessments. At the initial level, Dr. Haskins stated that due to depression and anxiety, the claimant may have trouble maintaining attention and concentration on complex tasks, but should have little trouble with short, simple, and routine tasks in a setting without fast-paced demand. She also noted that the claimant may have trouble maintaining socially appropriate workplace behavior, but could superficially interact in the workplace. With respect to attention/concentration, Dr. Haskins' assessment is consistent with the medical evidence of record, which documents that the claimant had fair-average concentration during mental status exams. As to social interaction, the claimant herself reported getting along with supervisors, but she would sometimes argue with co-workers; however, Dr. Haskins' limitation to superficial interaction encompasses such issues. Dr. Baker reported that the initial findings were consistent with the reconsideration claim level. Dr. Baker noted that the claimant alleged worsening of psychological symptoms; yet, there was no change in psychological treatment. This is consistent at hearing level and thus the assessments by Drs. Haskins and Baker continue to be persuasive.

(R. at 27.) (emphasis added).

Plaintiff asserts, and the undersigned agrees, that this discussion is inadequate. As a preliminary matter, the ALJ mentioned supportability, but never explained how the record

12

evidence supported the administrative findings from either Dr. Haskins or Dr. Baker. The ALJ's vague reference to supportability forces the Court to guess at which evidence was sufficiently supportive to make these findings persuasive or which evidence supported any deviations from them.

The ALJ more explicitly discussed the consistency factor. As part of that discussion, she wrote that Dr. Baker indicated that the findings at the initial level were consistent with the findings at the reconsideration level. (R. at 27.) That accurately describes what Dr. Baker wrote. (R. at 99.) Nevertheless, the ALJ neglected to note that Dr. Baker found additional limitations at reconsideration that Dr. Haskins did not find at initial review. Unlike Dr. Haskins, Dr. Baker found that Plaintiff was limited to "work in a separate workspace with occasional superficial interactions with others . . . ."; that she "might need occasional flexibility with breaks when experiencing increased symptoms"; that "[s]upervisors should provide supportive and constructive feedback"; and that Plaintiff "may need advance notice of major changes, which should be gradually implemented allowing her time to adjust to them." (R. at 98–99.) The ALJ not only failed to mention these additional limitations, she never explained why they were omitted from Plaintiff's RFC.

Defendant correctly contends that the ALJ was not required to adopt verbatim Dr. Baker's findings even though she determined that they were persuasive. (ECF No. 17, at PageID 711 (citing *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015) ("Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale.")). But where, as is the case here, an ALJ determines that an opinion or finding is persuasive and that it is consistent with the record, the ALJ must incorporate the

limitations in that opinion or finding or provide an adequate explanation for declining to do so. *See, e.g.*, *Queen v. Comm'r of Soc. Sec.*, No. 2:16–cv–1082, 2017 WL 6523296, at *9–10 (S.D. Ohio Dec. 21, 2017) (remanding where the ALJ "failed to include at least one limitation" from an opinion he had assigned great weight without explaining the omission). An ALJ's failure to provide such an explanation requires remand because it prevents this Court from conducting meaningful review to determine whether substantial evidence supports the ALJ's decision. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (noting that an ALJ's decision "must include a discussion of 'findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record.'" (quoting 5 U.S.C. § 557(c)(3)(A))); *Allen v. Astrue*, No. 5:11–cv–95, 2012 WL 1142480, at *8 (N.D. Ohio Apr. 4, 2012) (remanding where "the ALJ failed to properly articulate the RFC calculation," explaining that the Court was "unable to trace the path of the ALJ's reasoning"); *Commodore v. Astrue*, No. 10–295, 2011 WL 4856162, at *4, 6 (E.D. Ky. Oct. 13, 2011) (remanding action "with instructions to provide a more thorough written analysis," where the ALJ failed to articulate the reasons for his RFC findings such that the Court could not "conduct a meaningful review of whether substantial evidence supports the ALJ's decision"); *Cote v. Colvin*, No. 16–cv–57, 2017 WL 448617, at *7 (W.D. Wisc. Feb. 2, 2017) ("On remand, the ALJ must build a logical bridge between the evidence and any social functioning limitations that he chooses to include in the residual functional capacity assessment.").

Defendant also contends that even though Dr. Baker's findings are not a "mirror image" of Dr. Haskins' findings the ALJ must have determined that they were similar enough to conclude that they were consistent. (ECF No.17, at PageID 711.) But again, because the ALJ did not mention Dr. Baker's additional limitations, it is unclear if she determined that they were consistent

with Dr. Haskins' findings, or if she rejected them, or if they simply escaped her notice. Again, because that lack of discussion would force this Court to engage in conjecture, it prevents meaningful review.

It is also unclear if ALJ may have omitted Dr. Baker's limitations because Plaintiff failed to seek mental health treatment. When discussing Dr. Baker's findings, the ALJ wrote that although Plaintiff alleged worsening psychological symptoms, there was no change in her psychological treatment. (R. at 27.)[5] "In general, it is appropriate for the ALJ to consider a claimant's treatment (other than medication) in evaluating his or her symptoms and pain . . . and a claimant must follow *prescribed* treatment in order to obtain benefits absent good reason." *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing 20 C.F.R. §§ 404.1529(c)(3)(v); 404.1530) (emphasis in the original). But "Social Security Ruling 96–7p strongly suggests that a claimant should be allowed to explain his or her reasons for not pursuing certain treatment options." *Id*. Indeed, SSR 96–7p provides that an ALJ "must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96–7p, 1996 WL 374186, at *7 (July 2, 1996). In this case, the record contains evidence that Plaintiff had been unable to obtain counseling "due to insurance." (R. at 536.) Thus, to the extent the ALJ discounted or omitted Dr. Baker's additional limitations because Plaintiff failed to seek treatment, the ALJ should have developed the record as to Plaintiff's reasons for failing to seek treatment. But Plaintiff was never questioned about her pursuit of mental health treatment when she testified.

---

[5]The ALJ also discussed Plaintiff's failure to obtain treatment at step two. (R. at 26.)

Nor can the undersigned conclude that the failure to discuss the omission of Dr. Baker's additional opined limitations constitutes harmless error. At the February 22, 2019 hearing the VE testified that a person with Plaintiff's RFC could perform work in the national economy including such representative jobs as sorter (DOT. 526.687–010), inspector (DOT 222.687–042), and packer or bagger (DOT 920.687–018). (R. at 63–64.) The VE further testified that a person with Plaintiff's RFC plus some of the additional limitations Dr. Baker opined would still be able to perform those jobs. (R. at 65.) The VE was not asked, however, about all of Dr. Baker's additional opined limitations, including the limitation to working in a separate workspace. Therefore, the undersigned cannot conclude, on this record, that the omission of Dr. Baker's additional opined limitations from the RFC was harmless, and thus, that the ALJ's lack of discussion about those additional limitations was also harmless. Accordingly, the undersigned concludes that Plaintiff's allegation of error has merit.

## VI.     RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability determination and **REMAND** this case to the Commissioner and the ALJ under Sentence Four of § 405(g) for further consideration consistent with this R&R.

## VII.    PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Disrict Judge of this Court may accept, reject, or modify, in whole or

in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE